Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| NAHIRA NICOLE DELGADO RAMOS<br>Peticionaria<br><br>v.<br><br>JESÚS JIMÉNEZ NÚÑEZ y OTROS<br>Recurrido | KLCE202400742 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso. Núm. CA2022RF00834<br><br>Sobre: Custodia y otros |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Jueza Aldebol Mora

Adames Soto, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de julio de 2024.

a.

Acude ante nosotros la señora Nahira Nicole Delgado Ramos, (señora Delgado Ramos o peticionaria), solicitando la revocación de una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, (TPI), el 21 de mayo de 2024. Le tocó decidir al foro primario en qué escuela se debía matricular a una menor, hija de las partes de epígrafe, donde recibiera los servicios de educación especial que requería. La peticionaria sostuvo que la menor estaría mejor servida en una escuela privada, por ella elegida, mientras que el padre de la menor, el señor Jesús Jiménez Núñez (señor Jiménez Núñez o recurrido), impulsó que se mantuviera matriculada en una escuela pública especializada en educación especial.

Luego de que el TPI considerara sendos informes sociales presentados por la Trabajadora Social que tuvo a su cargo investigar el asunto, junto a la argumentación de las partes en sala, decidió que sería

NÚMERO IDENTIFICADOR

RES2024_____

en la escuela pública Petra Román Vigo donde la menor recibiría todos los servicios que requería, por lo que ordenó su matriculación allí.

La peticionaria no está conforme con tal decisión, y es por ello que recurre ante nosotros.

Sin embargo, evaluada con detenimiento la prueba documental que tuvo ante su consideración el foro recurrido, no encontramos nada allí que sirva para demostrar que hubiese abusado de su discreción al determinar dónde debía ser matriculada la menor, por lo cual decidimos denegar expedir el recurso solicitado.

b.

Las partes de epígrafe son padres de la menor JJD, nacida el 23 de octubre de 2011. No estando las partes casadas entre sí, la señora Delgado Ramos inició acción ante el TPI solicitando que se le concediera la custodia monoparental de la referida menor, y se le privase de la patria potestad al señor Jiménez Núñez, en contra de quien fue dirigida la *Demanda.*

En su *Contestación a la demanda,* el recurrido se allanó a la solicitud de custodia monoparental hecha por la peticionaria, pero objetó ser privado de la patria potestad de la menor.

Las alegaciones contenidas tanto en la referida *Demanda,* como en la *Contestación a Demanda,* ilustran unas relaciones claramente conflictivas entre los padres de la menor.

Como parte del proceso iniciado por la peticionaria, el 21 de febrero de 2023, el TPI le ordenó a la Unidad Social que realizara una investigación con referencia a la menor. En cumplimiento, el 12 de junio del mismo año, la Trabajador Social a cargo de la evaluación, señora Tapia Serrano, presentó el *Informe Social Forense*[1] requerido. En lo referente a la

---

[1] La Regla 34(E)(e) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, requiere a la parte que presenta un recurso de *certiorari,* la inclusión de un apéndice con documentos que formen parte del expediente original del TPI, y puedan resultar útiles al Tribunal de Apelaciones para resolver la controversia que le toque dirimir. A pesar de que este primer *Informe Social* contenía información de mucha relevancia en la consideración

controversia ante nuestra consideración surge de dicho *Informe* que la menor: **era participante del Programa de Educación Especial desde el 2022; ameritaba ayuda individualizada y supervisión constante para la ejecución de tareas; estaba ubicada en el quinto grado en la escuela Pedro Moczó Baniet**, en salón especial en escuela regular; tenía el siguiente aprovechamiento académico, **ciencias 96%, español 97%, sociales 99%, matemáticas 99%, educación física 83%, e inglés 73%**. (Énfasis provisto).

Es de notar que el referido *Informe* **no contenía recomendación alguna que sugiriera un cambio de escuela para la menor**. De la *Minuta[2]* donde se recogieron las argumentaciones de las partes sobre las recomendaciones contenidas en el *Informe Social* **tampoco** surge que se hubiese discutido la posibilidad de un cambio de escuela para la menor, ni que hubiese alguna insatisfacción con la escuela pública donde se encontraba matriculada.

El 23 de junio de 2023 el tribunal *a quo* le ordenó a la Unidad Social que realizara un *Informe Social Complementario*, con el propósito de verificar la evaluación terapéutica de la menor y las relaciones paterno-filiales.

A tenor, el 5 de febrero de 2024, la Trabajadora Social Pizarro Quiñonez presentó el *Informe Complementario* requerido. Surge de este *Informe Complementario*, en lo pertinente, que la peticionaria matriculó a la menor en el Colegio Limari en Carolina. Se detalló en el mismo *Informe* que las calificaciones de la menor en dicha escuela privada fueron las siguientes: matemáticas, 72%, estudios sociales, 55%, español, 54%, ciencia, 84%, educación física, 95%, inglés 81%. Fue indicado que la menor tenía un grave problema de ausentismo, (ausencias no justificadas en su mayoría), y se consideraba la posibilidad de que fracasara en sus

---

de la controversia ante nuestra atención, la peticionaria optó por no incluirlo en el apéndice, omisión que no consideramos un mero desliz.

[2] Apéndice 3 de la Oposición a *certiorari*, págs. 21-26.

clases. A ello se añadió que la menor fue descrita como retraída, tímida, callada y no socializaba, pero hacía *bullying* y molestaba a otras niñas. También se llamó la atención al hecho de que la peticionaria reconoció que la menor necesitaba tutorías académicas, pero al momento no contaba con los recursos económicos para proveerlas.

Surge de la *Minuta*[3] donde fueron plasmadas las incidencias de la *Vista de Lectura de Informe Complementario* al cual aludimos en el párrafo anterior, en lo pertinente, que el recurrido llevó a la atención del Tribunal que, según dicho *Informe*: la menor había sido cambiada a un colegio privado sin su consentimiento; estaba a punto de un fracaso total académico, y el Departamento de Familia no quería cerrar el caso de la menor por esta razón; el colegio no proveía servicios para las necesidades de la menor. Añadió el recurrido que, mientras la menor se encontraba estudiando bajo el Programa de Educación Especial del Departamento de Educación, mantenía unas notas excelentes, por lo que entendía que el mejor bienestar de esta ubicaba en la escuela pública donde se le daban tales servicios.

A lo anterior la peticionaria ripostó que: las ausencias al colegio eran justificadas, por razones médicas de la menor; que el cambio de la escuela fue por recomendación de las maestras anteriores, las cuales indicaron que esta no estaba siendo retada en dicha escuela; había tratado de comunicarse con el recurrido, pero este la tenía bloqueada de sus llamadas.

A raíz de lo ello, el TPI le ordenó a la Unidad Social a realizar otro informe complementario, esta vez para atender lo relacionado al aprovechamiento escolar de la menor, y evaluar cuál escuela sería la mejor para esta. De igual forma ordenó a la peticionaria a que cumpliera con velar por la asistencia de la menor a la escuela, e identificara un recurso a través del cual esta pudiera tomar las tutorías académicas.

---

[3] Apéndice 3 del recurso de *certiorari*, págs. 9-12.

El 7 de mayo de 2024, la trabajadora social a cargo del caso presentó al Tribunal un *Informe de Labor Realizada*, en respuesta a la *Orden* para que verificara la labor académica de la menor, y en qué escuela debía continuar estudios. En el análisis que proveyó la trabajadora social acerca de la controversia, informó que la menor había tenido una mejoría significativa en sus calificaciones en el colegio privado donde estaba, ya no se encontraba en nivel de fracaso escolar, además de mejorar notablemente la conducta, participación a clases y el problema de las ausencias, recibiendo tutorías educativas y ayuda sicológica. No obstante, destacó que la menor no había recibido el servicio de terapia ocupacional que requería, lo cual podría retrasar su desarrollo físico e intelectual.

En el *Informe Complementario* bajo discusión se indicó que la escuela pública Petra Román Vigo ofrece dentro de su plantel todos los servicios especiales que requiere la menor, de manera gratuita, además de contar con un componente socio emocional que reforzaría el proceso social. En definitiva, la recomendación del *Informe Complementario* fue en favor de que la menor asistiera a la escuela pública aludida.

En consecuencia, el 21 de mayo de 2024, el TPI emitió la *Resolución* cuya revocación nos solicita la peticionaria, ordenando que la menor sea matriculada en la escuela Petra Román Vigo.

En su recurso de *certiorari* la peticionaria aduce que, al así decidir, el foro primario cometió el siguiente error:

> Cometió error el Tribunal de Primera Instancia y abusó de su discreción al ordenar que la menor JJD sea matriculada en una escuela del sistema de educación pública, a pesar de que el mejor bienestar de la niña es que continúe estudiando en el colegio privado de educación individualizada en el que estudió hasta el sexto grado y, luego de un proceso de adaptación que fue difícil para ella, logró un aprovechamiento académico excepcional así como en los aspectos de conducta, procesos de socialización, participación en clase y estabilidad emocional. La decisión del foro de instancia no está sostenida con criterio alguno que aconseje que el mejor bienestar de la niña se garantiza cambiándola de escuela para que inicie un nuevo proceso de

adaptación y ajuste que afectará su desempeño académico, social y emocional.

Junto a su recurso de *certiorari* la peticionaria incluyó una *Solicitud en auxilio de jurisdicción*, suplicando la paralización de los procesos ante el TPI, hasta que dispusiéramos del asunto ante nuestra consideración.

Mediante *Resolución* de 11 de julio de 2024, accedimos a la petición de paralización de los procesos ante el foro primario, y le concedimos un término de cinco (5) días al recurrido para que se manifestara sobre los méritos del recurso presentado.

En cumplimiento, el recurrido instó *Oposición a recurso de certiorari*.

c.

La Regla 52.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1(d), establece, en lo pertinente, que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, podrá ser expedido por el Tribunal de Apelaciones por vías de excepción, cuando se recurre de casos de relaciones de familia.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction*, 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.*, 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró*, 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction*, supra, pág. 711.

El concepto discreción implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Claro, la

discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Municipio Autónomo de Caguas v. JRO Construction,* supra*,* págs. 711-712; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

En el ejercicio de nuestra discreción al decidir expedir o no un recurso de *certiorari,* nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello,* 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC,* supra, pág. 730.

Sobre lo mismo, nuestro Tribunal Supremo ha expresado que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

Aún más, el alto Foro expresamente ha advertido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

d.

La premisa fundamental de la cual partió la peticionaria para solicitarnos la revocación de la *Resolución* recurrida fue que, presuntamente, el TPI no contaba con ningún criterio o base para ordenar que la menor fuera matriculada en la escuela pública Petra Román Vigo. Aseveró la misma parte que el último informe social ante la consideración del foro recurrido lo que demostró fue que la menor exhibió un aprovechamiento académico extraordinario, cambios positivos en su conducta, y buenos ajustes en el colegio Limari. Sostuvo que, a diferencia de la escuela pública, en el referido colegio la instrucción es individualizada, y los servicios de educación especial que este último no ofrece podían ser obtenidos a través de otros medios.

No tiene razón la peticionaria al aseverar que el TPI carecía de bases para elegir la escuela pública. Muy al contrario, como detallamos en el tracto procesal, la prueba documental con la que contó el tribunal *a quo* al tomar su determinación sobre dónde debía continuar estudiando la menor, (los informes sociales descritos), sostenía sin dificultad la conclusión de la *Resolución* recurrida, y en modo alguno nos colocan en posición de imputarle que hubiese abusado de su discreción al así actuar.

Sobre lo anterior, valga resaltar que, del primer Informe Social Forense donde fueron evaluadas las ejecutorias académicas de la menor, de 12 de junio de 2023, surgió que esta se encontraba en la escuela pública, era participante del Programa de Educación Especial, donde recibía una serie de beneficios correspondientes a tal Programa, y mantenía excelentes notas en todas sus asignaturas, (salvo inglés). Es decir, la menor presentaba estupendo ajuste en la escuela pública donde estudiaba, beneficiándose de los servicios particulares que allí se ofrecían, en el Programa de Educación Especial.

Por lo anterior, no resulta sorpresivo que, al momento de la presentación de dicho *Informe Social* para la consideración del Tribunal,

ninguna de las partes presentara objeción alguna a la educación que se encontraba recibiendo la menor hasta el momento. Nótese que, luego de dicho primer Informe, el TPI ordenó a la Trabajadora Social que realizara un *Informe Complementario*, pero con el propósito de verificar la evaluación terapéutica de la menor y las relaciones paterno-filiales, **no** para revisar su aprovechamiento académico, puesto que los servicios escolares que recibía resultaban evidentemente satisfactorios a ese momento.

A pesar de lo anterior, surge del *Informe complementario* de 5 de febrero de 2024, que la peticionaria cambió a la menor a un colegio privado, sin el consentimiento del recurrido, ni consultar al Tribunal. Cuando fue cambiada de escuela la menor: bajó sus notas de manera drástica, al punto del fracaso; presentó problemas de ajuste social; no se benefició de un programa de educación especial y; presentó un gran problema de ausentismo.

No resulta necesario destacar que lo descrito en el párrafo que precede representó un cambio dramático entre la situación académica descrita en el primer *Informe Social*, (excelente ejecutoria de la menor en la escuela pública donde ubicaba), *vis a vis* lo ilustrado en el *Informe Complementario*, (empeoramiento de la experiencia escolar de la menor en todos los renglones, una vez fue cambiada a la escuela privada elegida por la peticionaria). A todas luces, ello causó que el TPI se viera compelido a intervenir con la situación académica de la menor, ordenando auscultar a la Unidad Social en qué escuela debía ser ubicada la menor, tomando como guía su mejor bienestar.

Es así como, en el *Informe Complementario* de 7 de mayo de 2024, la trabajadora social recomendó al TPI que la menor fuera matriculada en la escuela pública Petra Román Vigo, contando esta institución escolar con todas las ayudas necesarias para estudiantes que requerían educación especial.

Por lo anterior es que aseveramos no admitir la premisa de la peticionaria a los efectos de que el TPI estuvo desprovisto de prueba para determinar dónde se debía matricular la menor. El tracto procesal lo que establece es que la conclusión alcanzada por el foro primario fue el resultado de una serie de informes sociales que describieron a una menor con muy buen aprovechamiento académico mientras se mantuvo recibiendo todos los servicios brindados en el Programa de Educación Especial, pero que exhibió problemas académicos y de socialización en cuanto dejó de recibir tales servicios en una escuela privada.

Dicho lo anterior, advertimos que es cierto que la situación de la menor mejoró notablemente en la escuela privada donde se encontraba, según el último *Informe Complementario* que tuvo ante su atención el TPI. Sin embargo, la lectura de dicho *Informe* pone de manifiesto que, aún con la mejoría académica aludida, la menor continuaba sin recibir unos servicios que le eran indispensables, porque no estaban disponibles en la escuela privada que eligió la peticionaria para la menor, pero sí lo estaban en la escuela pública Petra Román Vigo.

En la exposición de derecho destacamos que la intervención de este foro intermedio con una determinación interlocutoria del TPI se justifica, cuando apreciamos que el foro primario actuó con prejuicio, parcialidad o incurrió en craso abuso de discreción. En este caso no podemos atribuir a la determinación recurrida visos de prejuicio o parcialidad, como tampoco observamos abuso de discreción al determinar en qué escuela se velaría por el mejor bienestar del menor. No nos corresponde sustituir el criterio del TPI por el nuestro, allí donde el foro primario contó con una prueba documental, como en este caso, que sirvió para sostener la determinación recurrida.

En definitiva, no encontramos razones para intervenir con el curso decisorio elegido por el foro recurrido, que está sustentado, de modo que procede denegar el recurso de *certiorari* presentado.

**Parte Dispositiva**

Por lo explicado, decidimos *Denegar* expedir el recurso de *certiorari* presentado. En armonía, dejamos sin efecto la paralización de los procesos ante el Tribunal de Primera Instancia que dispusimos mediante *Resolución* de 11 de julio de 2024, debiendo las partes atenerse a lo ordenado por dicho foro primario en la *Resolución* de 21 de mayo de 2024.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones